### FIRST NATIONAL BANK OF SARDIS et v PATTON et

Ohio Appeals, 7th Dist, Monroe Co

No 287.   Decided Dec 13, 1935

Matz & Matz, Woodsfield, for plaintiffs in error.

Moore, Moore & Moore, Woodsfield, for defendants in error.

**OPINION**

By NICHOLS, J.

The whole controversy which gives rise to this litigation required the jury to determine:

"First: Whether William Goddard, on Sept. 16 and Sept. 17, 1928 after the signing and delivery of his resignation to Blerk'ey, but before the acceptance thereof, by the Board of Directors, was acting in his capacity of cashier of The First National Bank of Sardis in procuring the loan of the funds with which he paid off his notes to the three several banks which held the United States Government Bonds as collateral,

and

Second: Whether in fact Goddard borrowed the money for the bank and its directors, or borrowed the same for his individual use and purpose."

According to the testimony of the plaintiff, three persons other than plaintiff and William Goddard were present at The Monroe Bank at the time the arrangements were made between the parties for the loan of these funds. None of the parties to this controversy saw fit to bring into the case the testimony of Urban Patton, Will Mooney, or David Mooney, all three of whom, according to the testimony of the plaintiff, were present at the time the negotiations were made for the furnishing of these funds.

As stated above, the story told by Goddard in his depositions taken and admitted in evidence, was to the effect that he borrowed the money for his individual account, while the plaintiff claimed that Goddard, at the time, was acting as cashier and agent of The First National Bank of Sardis, and its directors, and borrowed the money for them.

Plaintiff in error urges that the trial court erred in that it admitted the testimony of Goddard and of plaintiff as to what took place in The Monroe Bank when both of them were present, but rejected testimony of Goddard as to what was said between him and the two Mooneys at the bank when plaintiff was not present. It is apparent to this court that counsel for plaintiff in error makes this claim upon the theory that The Monroe Bank, of which the two Mooneys were officers, is a party to this litigation. The Monroe Bank is not a party to this litigation,—and there was no error committed by the trial court in excluding the testimony of Goddard as to what took place between him and the two Mooneys during the absence of the plaintiff, nor was there error in permitting the plaintiff to testify to the conversations held at the bank on Sunday, Sept. 16, in the presence of Goddard, who is a party to this action.

We have carefully examined the record for errors committed by the trial court in the matter of the admission and rejection

of evidence, and find no prejudicial error therein.

The plaintiff in error further claims that the trial court erred in admitting testimony of Goddard which tended to prove that he was acting as cashier or agent of the bank, contrary to the rule which prohibits agency from being established by the testimony of the agent himself.

In considering this claimed error we find, from an examination of the record, that John Hess, president of the bank as well as each of the other directors who were called as witnesses, admitted that Goddard had been cashier of The First National Bank of Sardis, Ohio, for a number of years, and that he had been entrusted with the complete management of the bank, and that he was given general authority to manage the same and to do whatever was necessary in that regard. We see no prejudicial error in the admission of any testimony by Goddard tending to establish this agency.

Plaintiff in error urges that the trial court erred in giving to the jury before argument some twelve special requests of plaintiff below to charge the jury. These requests were made to the court as a series. Many of them are abstract propositions of law, are misleading and confusing, and some of them are not good law applicable to the case. But, we find upon a thorough examination of the record that no exceptions were taken by the defendants below to the giving of these requests, and we are unable for that reason to reverse this case solely because of error of the trial court in giving these special requests to charge before argument, but for the purpose of determining whether substantial justice has been done in this case, we may consider the matter of the giving of these special requests in connection with other errors which are properly presented by the record.

The plaintiff in error further urges that the trial court erred in refusing to give certain special requests submitted by the defendant below to be given to the jury before argument. In this connection we quote from the record, on page 247, as follows:

"Defendants take exceptions to the court refusing to give defendants' requests."

The special requests of the defendants are seven in number, and are submitted to the court as a series. We have examined this series of requests to charge submitted by the defendants below, and find that

several of these are not good law applicable to the issues.

For example, one request reads as follows:

"I charge you that if William Goddard tendered his written resignation as cashier on Friday evening, effective immediately, and if he was never thereafter about said Bank he ceased, upon the tender of said resignation to be the cashier of The First National Bank of Sardis, Ohio, and any act of his thereafter would not bind the bank or any of the other named defendants, either as a Board or as individuals."

Another of these special requests is as follows:

"I further charge you as a matter of law that it was not necessary for the Board of Directors to pass on his resignation as cashier."

Another of these special requests is as follows:

"I charge you that neither Ben J. Bleakley, the National Bank Examiner, or his Assistant, E. Trumble Smith, were agents of The First National Bank of Sardis, Ohio, or its Board of Directors."

The record discloses that at least one of the directors of The First National Bank of Sardis, Ohio, testified that Bleakley, the Bank Examiner, took charge of the negotiations for and on behalf of the Sardis National Bank whereby its assets were transferred to The Union National Bank of Sistersville, W. Va. and the record further discloses that on Saturday and Monday, Sept. 15 and Sept. 17, The Sardis National Bank was kept open for business with the Examiner, Bleakley, in charge, that Goddard delivered to Bleakley, at the Sardis Bank, the cashier's check issued by The Monroe Bank of Woodsfield, Ohio, in payment of the note of Goddard held by The Sardis Bank, and that Bleakley delivered over to Goddard the cancelled note, and received for The Sardis Bank the bonds which had been hypothecated to secure this note. This testimony presented a question of fact to be determined by the jury as to whether Bleakley was at the time acting as the agent of the bank.

The request to charge with reference to the resignation tendered by Goddard as cashier on Sept. 14, if given, would have authorized the jury to find that under no circumstances could Goddard bind the bank and its Board of Directors after his resignation was tendered, and before the same was accepted, and would have required a

verdict in favor of the bank and its directors.

These requests were properly refused, and since they were a part of a series and the exception of defendant was to the refusal to give them as a whole, we find no prejudicial error in the refusal of the court to give the same.

"In considering a series of special requests to charge, given before argument, it is the duty of the court to consider each separate charge given in connection with all other separate charges given upon the same subject."

Wymer-Harris Construction Co. v Glass 122 Oh St 398.

"When requests to charge before argument are submitted as a series and some of them are improper, it is not prejudicial error to refuse to give any of the series."

Motor Co. v Barry, 30 Oh Ap 528;

Realty Co. v Stonehill, 19 C.C. (N.S.) 403, 29 C.D. 587;

Stove Co. v May, 16 Abs 498;

McDonald v State ex, 40 Oh Ap 223.

The plaintiff testified that he knew Goddard to be the cashier of The First National Bank of Sardis, for a number of years; that on Sunday, Sept. 16, 1928, when the negotiations were had for the furnishing of the funds in question, the plaintiff knew nothing about Goddard's troubles at the bank; knew nothing of his resignation as cashier, and believed him to be acting in his capacity as cashier. It seems reasonable to believe, from the testimony in this case, that the Directors of The First National Bank of Sardis would not be making public the matter of Goddard's resignation and his misdoings for fear that publication thereof would bring a run on the bank. The testimony shows that, in anticipation that rumor might get abroad of these troubles and cause a run on the bank, The Union National Bank of Sistersville, W. Va., sent to the Sardis Bank some $8,000.00 to provide against this emergency. If the jury believed that plaintiff had knowledge of the fact that Goddard had been cashier of The Sardis National Bank for many years, and had been transacting its business and that plaintiff had no knowledge of his resignation, or of the misdeeds of Goddard in hypothecating bonds for which the bank was responsible, then it was a question of fact for the jury to determine whether or not, at the time these funds were borrowed, Goddard was in fact acting for and on behalf of the

bank in procuring the loan of these funds.

We quote from Vol. 1 Ohio Jurisprudence, page 646, §18, under Agency, as follows:

"Notice of revocation—The authority of an agent, arising as it does from the relation of the agent to his principal, his power to bind the principal with respect to third persons, would seem logically to depend necessarily upon the continuance of that relation; but such, in law, is not the fact, in the case of a general agent, for one, having been a general agent, may, after he has ceased to be such, still bind the principal by his acts. Actual revocation does not in all cases terminate the agent's authority. Paradoxical as it may seem, a general agent may under certain circumstances, continue to represent and bind the interests of his former principal, after the actual revocation of his authority. Revocation, by the principal, of the authority of a general agent, to be binding on third persons who recently have dealt with such agent, or have had knowledge of the agency must be brought to their knowledge for they have the right to rely upon a continuance of the agent's authority to transact business of a similar character for the principal, until they are in some way informed of the revocation of his authority. This general rule is recognized in the civil law, as well as in the common law. And in the application of this rule the Supreme Court has held that delivery of a contract for cancellation to an agent whose authority to act for the principal has in fact been revoked, upon the execution of a similar contract with another, whom the agent also represents, is effective as a cancellation of the first contract, and entitles the person with whom the agent dealt to enforce the latter one. This rule rests upon public policy; practical purposes and interests of trade and commerce, and the imperious necessity of confidence in commercial relations of men, require that an agency, when constituted, should continue to be duly accredited. To secure this confidence, the law will regard an agency as continuing toward third persons, until actual or implied notice of the revocation. In no such case should the principal, who by his own conduct purposely invited confidence and credit to be reposed in the agent be permitted to gainsay the commission of credit and confidence so given him. The act of an agent is binding upon the principal, not merely, as in case of a deed made by an attorney duly qualified, because it is in the name of the principal, and his deed, but because business

has been done for the principal, and at his instance or by his procurement. The reason is substantially the same as that which makes binding upon the principal transactions before the termination of the agency, to-wit, the transactions were by procurement of the principal; it was he who constituted the agency, and invited confidence to be reposed in the agent, and thus procured or caused others to deal with the agent until notified of the termination of the authority conferred. The above rules apply not only to actual agencies, but to apparent or ostensible agencies; even if the principal gives notice to the agent not to exercise a particular authority that he previously assumed to exercise in such manner as to bind the principal, when in fact he had no authority to do so, the principal cannot escape liability with regard to subsequent acts, unless notice of the restriction is brought home."

Ish v Crane et, 8 Oh St 520, 13 Oh St 575. Aetna Insurance Company v The Stambaugh-Thompson Company, 76 Oh St 138.

We quote the first paragraph of the syllabus in the last cited case:

"Persons dealing with one who has recently been a duly authorized and acting agent of another in the transaction of a particular line of business, have a right to rely upon the continuance of his authority to transact business of a similar character for his principal, until they are in some way informed of the revocation of this authority."

It seems unnecessary for this court at this time to determine whether the resignation of William Goddard as cashier of The First National Bank of Sardis, Ohio, was effective upon the delivery of said resignation on Sept. 14 1928, or took effect only from the time of the acceptance of the resignation by the Board of Directors of the Bank on Sept. 17, 1928, after the funds in question had been furnished. Under the National Banking Act, the cashier was appointed during the pleasure of the Board of Directors, that is, the Board could terminate his office as cashier at their pleasure. The record of the minutes of the Board of Directors shows conclusively that they did not exercise their prerogative of accepting the resignation of the cashier when the same came to their attention at the meeting held on the evening of Sept. 14. The Board deferred action thereon until after the funds in question were borrowed. Under all of the circumstances

shown by this record, it was proper for the jury to determine, under proper instructions, of the court, whether William Goddard was acting as agent for the bank or its directors, or both, at the time the funds in question were borrowed.

The plaintiff in error urges that the trial court erred in refusing to permit the defendants below to amend their answer to conform to the proof, which motion was made at the conclusion of all the evidence in the case, the purpose of which amendment, as stated in the motion, being to permit defendants to plead misjoinder of parties and misjoinder of causes of action. The trial court committed no error in this respect for the reason that no motion had been filed by the defendants below to require the amended petition to be made definite and certain, and the amended petition showed on its face the fact that Urban Patton, had an interest only in a part of the funds in question. It was within the sound discretion of the trial court to grant or refuse leave to amend the answer of the defendants, under the circumstances.

The most serious questions presented for the determination of this court arise from the claim of the plaintiffs in error that the trial court erred in overruling the motions made by the plaintiffs in error for directed verdict at the conclusion of the evidence offered by plaintiffs, and at the conclusion of all the evidence, and upon the question whether or not the verdict of the jury is manifestly against the weight of the evidence.

In considering, first whether the motions for directed verdict should have been sustained, we again observe that the verdict of the jury found only against The First National Bank of Sardis, Ohio, and there is no finding in this verdict against any of the other defendants in this action. From an examination of the whole record, we find no evidence whatsoever from which the jury would have been warranted in finding against John Hess, John Burkey, A. Emmett Watters, John A. Fankhauser, or Joseph Haythorne, and, as to these individuals, the motions for directed verdict should have been sustained. The jury having made no finding against these last named individuals, the court had no authority to render judgment against them, but should have rendered judgment in their favor, and this court will render the judgment which the trial court should have rendered in favor of said John Hess, John Burkey, A. Emmett Watters, John A. Fankhauser and Joseph Haythorne.

The motions for directed verdict in favor of The First National Bank of Sardis, were properly overruled, there being sufficient evidence in the record to submit to the jury the question of fact as to whether William Goddard at the time of the borrowing of the funds in question, was acting for himself or for said bank.

The motion for a new trial, filed by the plaintiffs in error set forth as one of the grounds thereof that the verdict of the jury was manifestly against the weight of the evidence and contrary to law, and the petition in error urges that the Common Pleas Court erred in overruling this motion for a new trial, and it is now urged that this court find that the verdict of the jury was manifestly against the weight of the evidence and contrary to law. To the determination of this question we have carefully considered all of the evidence in the record. As hereinbefore stated, there is a direct conflict in the testimony of William Goddard with the testimony of the plaintiff, Edward C. Patton. It is urged by the plaintiff below that this conflict presented such a situation that this court would not be authorized in setting aside the judgment on the ground that the verdict of the jury was manifestly against the weight of the evidence. But the oral testimony of these two witnesses is but a part of the evidence from which the jury should have arrived at its verdict.

Looking to the testimony of the plaintiff below, we find the following as the only conversation had between Goddard and the plaintiff with reference to the borrowing of these funds. We quote the testimony of plaintiff, from page 78 of the record:

"Q. What did Bill Goddard say?"

"A. Mr. Goddard said, 'that the Sardis Bank or The First National Bank of Sardis, was on a deal with The Union National Bank of Sistersville, West Virginia, and that they needed $15,000.00 to close that deal, only wanted it for a short time', and he said, 'will need it for thirty days or less' and that it would have to be put in by the next day."

"Q. You recall anything else that was said? I will ask you to state whether or not Goddard said anything about the reason he was out there."

"A. He was out there to raise this money for that purpose."

"Q. What else if anything, did anybody say after that."

"A. Dave Mooney said 'Ed, there is about $5000.00 in your account here, and if you care to, you could withdraw that, and we. will furnish the balance to make up the amount needed of $15,000'."

"Q. Anything said about any notes at the time?

"A. Dave Mooney said 'we will fix this up'."

"Q. You and Urban and Goddard signed this note, the note was written up at that time?

"A. It was."

In support of this testimony of plaintiff, we can find no corroboration throughout the entire record except the fact that on the date said conversation took place the Directors of The First National Bank of Sardis, Ohio, were attempting to make a deal with The Union National Bank of Sistersville, W. Va., to take over the assets of The Sardis Bank, and whereby the Sistersville Bank would assume the liabilities of The Sardis Bank to its depositors. There is nothing in the record to indicate that any of Directors of The Sardis Bank, or anyone on their behalf, either requested, directed or authorized Goddard to borrow any funds with which to carry forward this deal between The Sardis Bank and The Sistersville Bank, or to indicate that the borrowing of any funds was contemplated by The Sardis Bank in the carrying forward of this deal, or for any other purpose except as it might be inferred that the directors of The Sardis Bank would be interested in obtaining a return of the bonds which Goddard had pledged as security for his notes, and the fact that the Sardis Bank received the return of these bonds, together with the sum owing to it on Goddard's note.

On the other hand, Goddard testified very positively that he borrowed these funds for his individual use and purpose of paying off his individual indebtedness; that he told plaintiff and plaintiff's brother, Urban Patton as well as the officers of The Monroe Bank, that he was borrowing the funds individually and for his own purposes, and expected to pay the same out of his own individual property.

In support of this testimony of Goddard, we have the following facts as disclosed by the record:

FIRST:

Plaintiff testified that the loan was to be repaid in fifteen or thirty days, but nevertheless, he at no time made any demand of The First National Bank of Sardis, or any of the Directors of said bank, for the repayment of said loan, and never

made any claim to said bank or said Directors until the institution of this suit, two years after the funds were furnished.

SECOND:

Urban Patton, the brother of plaintiff, refused to join in this suit as plaintiff although he bound himself to The Monroe Bank, on the note given to said bank for the $10,193, of said funds furnished by it.

THIRD:

Urban Patton did not testify in this case, nor did the plaintiff call either Will Mooney or Dave Mooney, whom he says were present at the time the negotiations were made for the furnishing of this money.

FOURTH:

The record discloses that Urban Patton and William Goddard were related, the wife of Urban Patton being the sister of William Goddard; Urban Patton and plaintiff resided side by side, Urban Patton went with William Goddard to The Monroe Bank where the negotiations for the loan of the money took place. Plaintiff claims that he never heard of any trouble between Goddard and the bank until the following summer after the money was furnished, at which time, as shown by the record Goddard had either plead guilty, or had been tried, convicted, sentenced to and imprisoned in the Atlanta Penitentiary.

The only explanation given by plaintiff as to why he had not informed The First National Bank of Sardis, Ohio, or its directors, that Goddard had borrowed money for them, and of his failure to, ask the Sardis Bank and the directors to repay him prior to the institution of this suit was his statement, as shown on page 90 of the record:

"I just felt I was beat out of it."

FIFTH:

In addition to all this, neither the plaintiff nor the Monroe Bank either asked or received any note with the name of The First National Bank of Sardis signed thereto, or with the name of William Goddard as cashier signed thereto, but each said plaintiff and The Monroe Bank accepted the note signed with the individual name of William Goddard. True, the suit is not upon the note. If it were, it is doubtful whether any evidence could be introduced to contradict the writing, but it is significant, as supporting the contention of the defendants below, but the plaintiff accepted the individual note of William Goddard as the only written evidence of indebtedness to plaintiff.

Again, the record discloses that the debt which was paid with the funds in question was the individual debt of William Goddard and that he was attempting, by the payment of this debt, to avoid criminal prosecution, although there is nothing in the record to indicate that any promise had been made to him by anyone representing the bank, or its directors, or the Bank Examiner, to the effect that he would not be prosecuted if payment was made.

It is not the province of this court to determine for the parties what witnesses they shall produce in a case, but the burden was upon plaintiff in this action to establish by the preponderance of the evidence that Goddard was acting as agent of the bank in borrowing these funds, and it is the conclusion of this court that the plaintiff below failed to carry this burden, and that the verdict of the jury is manifestly against the weight of the evidence, and that substantial justice has not been done in this case.

In determining whether substantial justice has been done, we are permitted to consider the propositions of error in the Common Pleas Court in the giving of the special requests of plaintiff to charge the jury before argument, although no exception was made thereto by the defendant at the time.

"Where a judgment is sought to be reversed for error in overruling a motion for a new trial on the ground that the verdict is contrary to the law and the evidence, and the record discloses the whole of the testimony, the charge as given, and the requests to charge which were refused and given, the court will examine the whole record to see whether the case was fairly and legally tried although no exceptions whatever were taken."

Sec 11564 GC.

Railway Company v Strader, 29 Oh St 448;

Railway Company v Fitzpatrick, 42 Oh St 318;

Baker v Pender, 32 Oh St 494;

Cox v Waltz, 13 Abs 364.

Among the special requests of plaintiff below to charge the jury before argument, we find the following:

"A director of a bank undertakes that he possesses at least ordinary knowledge and skill and that he will bring them to bear in the discharge of his duties as such director. If through recklessness, and inattention to the duties confided in him, frauds are perpetrated, by other officers or

agents or co-directors, which ordinary care on his part would have prevented, he is personally liable for the loss resulting."

This request had no application to the facts in this case. Counsel for defendants below seem to confuse the action with one wherein the owner of the pledged bonds may have sued The First National Bank of Sardis, Ohio, and its directors, for the wrongful diversion of these bonds. In the case at bar fraud is neither plead nor proven.

Another of these requests of plaintiff to charge, which was given by the court, is as follows:

"A presumption arises in the absence of evidence to the contrary, that either an officer or a managing director of a bank has knowledge of its doings and transactions whenever by ordinary diligence he could have acquired the same."

The question of knowledge of an officer or managing director of The First National Bank of Sardis, Ohio, is not material in this case. The sole question was whether or not William Goddard was acting for himself or for the bank in borrowing these funds.

Another of the special requests of plaintiff given by the court before argument, is as follows:

"You must determine the character of the agency claimed in this case under the testimony, and if you should find from a prepondenace of the testimony, that William Goddard acted as such agent of the defendants or any of them, the person or persons or corporation for whom he acted as such general agent is bound by his acts even though he, as such agent, exceeded his authority, provided the plaintiff did not know it at the time."

By this request the court told the jury that they might determine the character of the agency claimed in the case from the testimony alone; whereas, the jury was required to determine this question from all the evidence including the testimony of the witnesses.

Another of the special requests of plaintiff, which was given to the jury before argument, is as follows:

"The principal, for whom the agent assumed to act, if he did so assume to act, cannot in general adopt a part and disavow a part of the contract so made by the person who proposed to be his agent."

The question was not what the principal can do, "in general," but what the principal in fact did in the case at bar.

Another of the special requests of plaintiff, which was given to the jury before argument, is as follows:

'You are instructed that if the defendants or any of them, by their, his or its voluntary act placed William Goddard in such situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, was justified in assuming that said William Goddard was authorized to, perform on behalf of his principal or principals a particular act, and he, having performed such particular act, his principal—or principals would be estopped as against such innocent third person from denying the agent's authority to perform it and such principal or principals would be bound by the acts of said Goddard, if he so acted."

This charge is confusing and misleading to the jury, and did not sufficiently designate the particular acts which the jury were to determine.

On the whole, we find that the verdict of the jury is manifestly against the we'ght of the evidence, and that substantial justice has not been done. Final judgment is rendered in favor of the defendants, John Hess, John Burkey, A. Emmett Watters, John A. Fankhauser and Joseph Haythorne, and the judgment of the trial court rendered against the defendant, The First National Bank of Sardis, Ohio, is reversed, and this cause is remanded to the Common Pleas Court for further proceedings.

Judgment reversed.

CARTER and ROBERTS, JJ, concur.